**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3459-23

DAVID DE PIERRO and
GUIDO SALANDRA,

     Plaintiffs-Appellants,

v.

ANTHONY COLASANTI,
ANTHONY MAUTONE, SR.,
ANTHONY MAUTONE, JR.,
VINCENT BONOMO, and
126 NEW YORK AVENUE, LLC,

     Defendants-Respondents.

_____

Submitted October 15, 2025 – Decided February 2, 2026

Before Judges Rose and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3176-19.

De Pierro Radding, LLC, attorneys for appellants (Giovanni De Pierro, Alberico De Pierro, and Davide De Pierro, on the briefs).

McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys for respondents Anthony Mautone, Sr.,

Anthony Mautone, Jr., and 126 New York Avenue, LLC; Karen A. Ermel, LLC, attorney for respondents Anthony Colasanti and Vincent Bonomo (Edward J. DePascale and Karen A. Ermel, of counsel and on the joint brief).

PER CURIAM

Plaintiffs David De Pierro and Guido Salandra appeal from six Law Division orders in this dispute among members of a limited liability company. Plaintiffs appeal: (1) the August 11, 2022 order granting summary judgment to defendants Anthony Mautone, Sr. (Mautone, Sr.), Anthony Mautone, Jr. (Mautone, Jr.), and 126 New York Avenue, LLC (126 NY LLC) on all claims relating to the real property at 122-124 New York Avenue in Jersey City (122-124 NY Property), dismissing those claims with prejudice, and barring plaintiffs' experts with respect to the 122-124 NY Property;[1] (2) the August 11, 2022 order granting summary judgment to defendants Anthony Colasanti and Vincent Bonomo on all claims relating to the 122-124 NY Property, and dismissing those

---

[1] We derive from the record that Mautone, Sr. died at some point between the filing of the amended complaint and June 10, 2022, when the motion court referred to Mautone, Sr.'s estate during oral argument on defendants' motions for partial summary judgment. In the August 11, 2022 order concerning Mautone, Sr.'s motion, the court noted "[p]laintiffs have yet to file an amended complaint substituting the Estate of Anthony R. Mautone, Sr. for Anthony R. Mautone, Sr." and stated the order was intended to apply to the estate. It is not clear if any party subsequently moved to substitute the Mautone, Sr.'s estate for Mautone, Sr. See Rule 4:34-1(b).

2

claims with prejudice; (3) the December 2, 2022 order granting summary judgment to Mautone, Sr., Mautone, Jr., and 126 NY LLC, on all claims relating to the property at 126 New York Avenue in Jersey City (126 NY Property), and dismissing those claims with prejudice; (4) the December 2, 2022 order granting summary judgment to Bonomo and Colasanti on all claims relating to the 126 NY Property, and dismissing those claims with prejudice, accept for plaintiffs' breach of fiduciary duty claims against Colasanti; (5) the January 20, 2023 order granting Colasanti's motion for reconsideration of the December 2, 2022 order, and granting summary judgment in his favor on plaintiffs' breach of fiduciary duty claims; and (6) the January 20, 2023 order denying plaintiffs' motion for reconsideration of the December 2, 2022 orders to the extent they granted summary judgment to defendants.  We affirm.

I.

On September 22, 2006, plaintiffs, Mautone, Sr., Mautone, Jr., Colasanti, and Bonomo formed Hudson Palisades, LLC (Hudson Palisades).  The purpose of Hudson Palisades was to purchase the real property at 325 Palisade Avenue in Jersey City (325 Palisade Property), then improved with a commercial building, and the adjacent 122-124 NY Property, then vacant, and in accordance with a redevelopment plan, renovate the commercial building into residential

units, and improve the vacant parcel. The Hudson Palisades operating agreement named De Pierro as its managing member.

On September 15, 2007, Hudson Palisades purchased the 325 Palisade Property and the 122-124 NY Property.

On February 20, 2009, the members of Hudson Palisades formed Hudson Palisades Urban Renewal, LLC (Hudson Urban Renewal). The purpose of Hudson Urban Renewal was to own the 325 Palisade Property and the 122-124 NY Property to take advantage of long-term tax abatements available to urban renewal entities. The formation documents named De Pierro as the managing member of Hudson Urban Renewal. In March 2009, Hudson Urban Renewal filed an application with Jersey City for a long-term tax abatement for the 325 Palisade Property.

While the tax abatement application was pending, Mautone Jr. advised Colasanti he executed a contract to purchase the 126 NY Property. This parcel was adjacent to the 122-124 NY Property, but was not part of the redevelopment plan. Because Hudson Urban Renewal was an urban renewal entity, with a purpose limited to initiating and conducting projects pursuant to a redevelopment plan, it could not acquire the 126 NY Property until the property was included in a redevelopment plan.

In a March 30, 2009 letter, Colasanti advised the members of Hudson Urban Renewal Mautone, Jr. had executed a contract to purchase the 126 NY Property for $175,000. He further advised in relevant part as follows:

> [Mautone, Jr.] recently learned that the single [-]family home located immediately next door to the [122-124 NY Property] . . . was for sale . . . .
>
> I briefly spoke with [De Pierro] and advised him that [Mautone, Jr.] would be making an offer to purchase the [126 NY Property], in his name, on behalf of [Hudson Urban Renewal].
>
> . . . .
>
> I think it will be easier if [Mautone, Jr.] purchases the [126 NY Property] in his name, individually, and convey[s] it to [Hudson Urban Renewal] at a later date. It will be a year or more before [Hudson Urban Renewal] takes any action on the development of the [122-124 NY Property].
>
> I think it will also be easier for [Mautone, Jr.], individually, to obtain a mortgage on this property then if title was taken by [Hudson Urban Renewal] and [Hudson Urban Renewal] sought a mortgage.
>
> While title will be held by [Mautone Jr.], all costs and expenses for the [126 NY Property] will be the responsibility of [Hudson Urban Renewal].
>
> I estimate that . . . we will need . . . $48,750 [d]ollars to close . . . .
>
> Hopefully, we can rent the property to cover taxes, insurance[,] and part of the mortgage.

A-3459-23

If you are in agreement that we proceed as set forth above, please sign [below] and return.

The letter contained a line for the members of Hudson Urban Renewal to indicate by their signature they "[n]oted and approved" the contents of the letter.

None of the members of Hudson Urban Renewal signed and returned Colasanti's March 30, 2009 letter.

In a May 22, 2009 letter, Colasanti again advised the members of Hudson Urban Renewal Mautone, Jr. had executed a contract to purchase the 126 NY Property. He advised in relevant part as follows:

> [Mautone, Jr.], on behalf of the members of [Hudson Urban Renewal], executed a [c]ontract in the sum of $175,000 to purchase the [126 NY Property]. Closing is scheduled within the next ten days. . . . Based upon the present ownership percentages of the company and the approximate $57,500 that will be needed for closing, we will require contribution from each of the members as follows:
>
> | [Mautone, Sr.] | $10,062.50 |
> | [Mautone, Jr.] | $10,062.50 |
> | . . . De Pierro | $10,062.50 |
> | . . . Salandra | $10,062.50 |
> | . . . Bonomo | $11,500.00 |
> | . . . Colasanti | $ 5,750.00 |
>
> To date, [Mautone, Jr.] has contributed $11,000 towards the deposit, I have contributed $6,500 towards the deposit.

6

> While title to the property will remain in [Mautone, Jr.'s] name, [Mautone, Jr.] will be holding it for the benefit of the members as named above and after we have completed the restoration/construction of 325 Palisade Avenue, we will seek to develop the [122-124 NY Property], along with the subject real estate.

Plaintiffs, Mautone, Sr., and Bonomo did not make the contributions requested in the May 22, 2009 letter.

On June 5, 2009, Mautone, Jr. purchased the 126 NY Property. Title was transferred to Mautone, Jr. by deed, which he recorded. Because four members of Hudson Urban Renewal had not contributed to the purchase of the 126 NY Property and there was no agreement among the members of Hudson Urban Renewal regarding the property, Colasanti asked Mautone, Jr. to return his $6,500 contribution to the purchase. Mautone, Jr. agreed and returned Colasanti's contribution. After June 5, 2009, Mautone, Jr. had no communications with plaintiffs regarding the 126 NY Property.

On July 7, 2009, Hudson Urban Renewal and Jersey City entered into an agreement providing a long-term tax abatement for the 325 Palisade Property.

An October 31, 2009 operating agreement of Hudson Urban Renewal provides plaintiffs were to receive $250,000 as compensation for their construction management services related to redevelopment of the 325 Palisade Property. The operating agreement does not mention the 126 NY Property.

A-3459-23

On December 2, 2009, Hudson Palisades conveyed title to the 325 Palisade Property and the 122-124 NY Property to Hudson Urban Renewal. In January 2020, renovation of the 325 Palisade Property started.

On or about May 1, 2011, the members of Hudson Urban Renewal executed an amended operating agreement providing, among other things, a change in the membership interests of the members. The amended operating agreement did not mention the 126 NY Property.

Sales of residential condominium units at the 325 Palisades Property started in July 2012 and ended in February 2013. By May 2013, Hudson Palisades had paid plaintiffs at least $250,000 for their construction management services at the property.

On September 30, 2014, plaintiffs filed a complaint in the Law Division against Colasanti, The Law Office of Anthony T. Colasanti, Mautone, Sr., and Mautone, Jr. They alleged legal malpractice against Colasanti and his firm, and breach of contract, fraud, and breach of fiduciary duties against Colasanti, Mautone, Sr., and Mautone, Jr., all with respect to Hudson Palisades and the financing of the renovation and construction at the 325 Palisade Property (the 2014 Law Division Action). The complaint alleged the members of Hudson

A-3459-23

Palisades agreed to develop the 325 Palisade Property and the 122-124 NY Ave Property, but did not mention the 126 NY Property.

On November 14, 2014, Colasanti, Mautone, Sr., Mautone, Jr., and Bonomo filed a complaint in the Chancery Division against plaintiffs (the 2014 Chancery Division Action). They sought, among other things: (1) partition of the 122-124 NY Property; (2) the dissolution and winding up of Hudson Palisades; (3) damages for De Pierro's breach of his obligations as managing member of Hudson Urban Renewal; and (4) damages for plaintiffs' breach of their obligations as construction managers at the 325 Palisade Property. Plaintiffs filed a counterclaim effectively repeating the allegations in the 2014 Law Division Action.

On August 19, 2015, the members of Hudson Palisades removed De Pierro as managing member and elected Colasanti as managing member. The Chancery Division subsequently denied plaintiffs' motion to vacate De Pierro's removal as managing member of Hudson Palisades.

On June 6, 2016, the court entered an order in the 2014 Law Division Action granting summary judgment to defendants and dismissing plaintiffs' claims with prejudice.

9

On August 8, 2016, the court entered a consent order in the 2014 Chancery Division Action. The consent order dismissed plaintiffs' counterclaims with prejudice, ordered the affairs of Hudson Urban Renewal be wound up in a timely manner, and ordered the 122-124 NY Property be sold at an auction conducted by Max Spann Real Estate and Auction Company (Max Spann) within forty-five days. The remaining claims for damages in the Chancery Division Action were transferred to the Law Division for resolution, where they were assigned a new docket number (the 2016 Law Division Action).

After entry of the consent order, a title search revealed issues preventing the sale of the 122-124 NY Property. The title issues were not resolved until late summer 2018.

On October 15, 2018, the parties settled the 2016 Law Division Action. The settlement agreement was placed on the record in relevant part as follows:

> (1) In accordance with the [c]onsent [o]rder, the parties shall immediately retain the services of Max Spann to present the 122-124 [NY] Property for sale at auction. Max Spann shall be instructed to place an undisclosed reserve of $2,500,000[] on the 122-124 [NY] Property at auction. In the event that the undisclosed reserve of $2,500,000[] is not met at the auction, the 122-124 [NY] Property will be submitted to a second auction at which the highest bid will be accepted by the parties as the winning bid.

(2) Plaintiffs shall pay the amount of $250,000.00 to Colasanti, Bonomo, Mautone, Sr. and Mautone, Jr. Said $250,000.00 to be deducted from [p]laintiffs' portion of the net proceeds from the auction sale of the 122-124 [NY] Property.

(3) The net proceeds from the auction sale of the 122-124 [NY] Property and the balance remaining in [Hudson Palisades'] bank account, subject to the reconciliation of the capital accounts of the members of the LLC[,] . . . shall be distributed to the parties in accordance with their . . . percentage of interests in the LLC.

The court entered an order incorporating the settlement agreement, and dismissed the 2016 Law Division Action.

On December 13, 2018, Max Spann held the first auction of the 122-124 NY Property. The high bid was $950,000, plus a ten-percent buyer's premium of $95,000 to be paid to Max Spann, for a total of $1,045,000. In accordance with the settlement agreement, plaintiffs rejected the high bid because it was below $2,500,000.

While the auction was pending, a bidder, independent of the auction, offered to purchase the 122-124 NY Property for $1,100,000, plus a ten-precent buyer's premium of $95,000 to be paid to Max Spann, for a total of $1,195,000. Plaintiffs rejected the offer in accordance with the settlement, which provided only for the sale of the property at auction.

11

On April 6, 2019, after the second auction was authorized but had not taken place, Michael Bovaird offered to purchase the 122-124 NY Property for $1,650,000, with no buyer's premium.

While this offer was pending, Colasanti's use of Hudson Palisades funds for personal matters was revealed. After Colasanti resigned as managing member of Hudson Palisades, the members elected Bonomo as managing member.

On April 11, 2019, Bonomo rejected Bovaird's offer because it was not made at the second auction, as required by the settlement agreement.

On April 19, 2019, Bovaird made a second offer to purchase the 122-124 NY Property, again for $1,650,000 with no buyer's premium.

On April 22, 2019, Mautone, Sr., Mautone, Jr., Bonomo, and Colasanti rejected Bovaird's second offer because it was not made at the second auction.

On May 1, 2019, plaintiffs filed a verified complaint in the Chancery Division requesting emergent relief. Plaintiffs alleged counsel for defendants and a representative of Max Spann opined a second auction was likely to result in a lower purchase price than the first auction. Thus, plaintiffs argued the court should stay the second auction, which was scheduled for the following day, and

vacate the settlement agreement so the property could be sold privately. Defendants opposed the application.

On May 2, 2019, the court issued an order denying plaintiffs' request for emergent relief.[2] In an oral decision, the court found the second auction was a bargained-for provision of the 2018 settlement agreement and plaintiffs' concern the second auction would not be financially advantageous was not a basis on which to alter the agreement and stay the second auction.

On May 2, 2019, Max Spann held the second auction for the 122-124 NY Property. Hudson Street Investment Realty, LLC (Hudson Street) submitted the highest bid of $1,625,000, plus a ten-percent buyer's premium to be paid to Max Spann, for a total of $1,787,500.

On June 19, 2019, the 122-124 NY Property was sold to Hudson Street.

On June 25, 2019, the proceeds of the sale were distributed in accordance with the settlement agreement to the members of Hudson Urban Renewal.

On August 15, 2019, plaintiffs filed the complaint in the Law Division in the action that gave rise to this appeal.

---

[2] The caption of the May 1, 2019 verified complaint identified plaintiffs as defendants and had a 2015 Chancery Division docket number not associated with the actions described in this opinion. The order denying plaintiff's request for emergent relief contained the caption and docket number of the 2016 Law Division Action.

On November 20, 2019, Mautone, Jr. conveyed the 126 NY Property to 126 NY LLC, of which he is the sole member. Neither Hudson Palisades nor Hudson Urban Renewal paid any of the expenses associated with the 126 NY Property during the ten years it was owned by Mautone, Jr.

On June 30, 2021, plaintiffs filed an amended complaint adding 126 NY LLC as a defendant. Plaintiffs alleged: (1) breach of fiduciary duties; (2) fraud; (3) tortious interference; (4) conversion; (5) civil racketeering; (6) consumer fraud; and (7) conspiracy. In addition to alleging misappropriation of Hudson Urban Renewal's funds by Colasanti, plaintiffs alleged the second auction did not produce the profits that could have been obtained had the parties amended their settlement agreement or agreed to plaintiffs' request to stay the second auction and sell the property in a private transaction. Plaintiffs also alleged Mautone, Jr. purchased the 126 NY Property on behalf of the members of Hudson Palisades and improperly transferred the parcel to 126 NY LLC.[3]

---

[3] The amended complaint alleged it is "beyond alarming and suspicious" that defendants "want to proceed to auction" the 122-124 NY Property, which plaintiffs were "fearful" would result in "substantial losses" from a winning bid of less than a then-pending $1,650,000 offer for the property. However, the second auction, which resulted in a winning bid above $1,650,000, took place more than two years prior to the filing of the amended complaint.

14

After discovery, defendants moved in two motions for partial summary judgment on all claims relating to the 122-124 NY Property and the 126 NY Property. They argued plaintiffs' claims regarding: (1) the 122-124 NY Property should be dismissed because the settlement agreement and consent order required the second auction; and (2) the 126 NY Property were unfounded and barred by the statute of limitations. Defendants also moved to bar plaintiffs' expert witnesses who opined on damages relating to the sale of the 122-124 NY Property. Defendants did not seek summary judgment on plaintiffs' allegations of misappropriation by Colasanti.

Plaintiffs opposed the motions, arguing Colasanti and Bonomo violated the settlement agreement, thereby vitiating the parties' agreement to hold the second auction and engaged in fraudulent activity after the second auction. In addition, they argued their claims with respect to the 126 NY Property were not barred by the statute of limitations under the discovery rule because shortly before filing the complaint they first discovered Colasanti's March 30, 2009 letter had not been delivered to them. Plaintiffs claimed had they known of the letter, they would have responded and accepted Mautone, Jr.'s offer. Finally, plaintiffs argued because defendants were not entitled to summary judgment on

A-3459-23

plaintiffs' claims regarding the 122-124 NY Property, their experts should not be barred.

On August 11, 2022, the court entered two orders granting defendants' motions in part. The court granted summary judgment on all claims relating to the 122-124 NY Property. In addition, the court granted defendants' motion to bar plaintiffs' experts with respect to the 122-124 NY Property. The court denied summary judgment on the claims relating to the 126 NY Property.

In a written decision, the court found the court-approved settlement agreement of the 2016 Law Division Action required the second auction of the 122-124 NY Property and precluded plaintiffs' claims with respect to the parcel. The court rejected plaintiffs' argument the failure to hold the auction within forty-five days of the original consent order vitiated the parties' settlement. The court found the delay in holding the auction was attributable to the cloud on title, and the parties subsequently executed the 2018 settlement agreement, in which they once again consented to the sale of the property at auction. The terms of the agreement included a second auction at which the highest bid would be accepted if the first auction did not produce an offer of $2,500,000 or more. Thus, the court found plaintiffs agreed to accept the risk the 122-124 NY Property would be sold at the second auction for less than they may have wanted.

16

Regarding plaintiffs' allegations of a "slew of fraudulent activities, actions, and disbursements," after the second auction, the court found "[p]laintiffs [did] not identify documents in the record proving same or identify the allegedly fraudulent activity." The court noted plaintiffs filed a statement of material fact not in dispute in opposition to the summary judgment motions that did not address the allegations of fraud. The court concluded:

> Here, [p]laintiffs have not provided this [c]ourt with any substantive, evidence-based reason to deny summary judgment to the [d]efendants. Plaintiffs have failed to identify material issues of fact. Plaintiffs rely entirely on speculation about the fraud allegations and present bare conclusions without factual support. Defendants have shown that they are entitled to summary judgment, as a matter of law, as to the 122-124 [NY] [p]roperty. As such, this part of the summary judgment motion is granted.

The court found plaintiffs' experts issued reports appraising the 122-124 NY Property and opining with respect to damages from the sale of the property at the second auction. The court concluded because summary judgment had been granted to defendants on plaintiffs' claims relating to the 122-124 NY Property, the expert reports would not assist the trier of fact and were barred. Finally, the court found there were disputed issues of material fact with respect to plaintiffs' claims relating to the 126 NY Property.

17

On October 5, 2022, defendants, in two motions, renewed their motions for summary judgment on plaintiffs' claims relating to the 126 NY Property.

On December 2, 2022, the court entered orders: (1) granting summary judgment to Mautone, Sr., Mautone, Jr., 126 NY LLC, and Bonomo on all claims relating to the 126 NY Property and dismissing those claims with prejudice; (2) granting summary judgment to Colasanti on all claims relating to the 126 NY Property, except plaintiffs' breach of fiduciary duty claims, and dismissing those claims for which summary judgment was granted; and (3) denying summary judgment to Colasanti on plaintiffs' breach of fiduciary duty claims relating to the 126 NY Property.

In an oral decision, the court found in a member-managed limited liability company, each member owns a duty of care to the other members. See N.J.S.A. 42:2C-39(a) to (c). The court found Colasanti had a fiduciary duty to plaintiffs and concluded disputed questions of fact existed with respect to whether and when Colasanti sent the March 30, 2009 letter and whether he followed up on that letter. The court found a jury could conclude Colasanti breached his fiduciary duty to the members of Hudson Urban Renewal with respect to the opportunity to develop the 126 NY Property by not ensuring delivery of the

A-3459-23

March 30, 2009 letter and not following up on the letter. The court, therefore, denied summary judgment on plaintiffs' breach of duty claims against Colasanti.

The court found there were no dispute of material fact the other defendants breach a fiduciary duty to plaintiffs. The court, therefore, granted summary judgment on plaintiffs' breach of fiduciary duty claims to all defendants except Colasanti.

With respect to plaintiffs' fraud claims relating to the 126 NY Property, the court found the record contained no evidence defendants made deceitful statements to plaintiffs regarding the property. The court reached a similar conclusion with respect to plaintiffs' conversion claim, finding no evidence in the record plaintiffs owned the 126 NY Property or had an immediate right to possess the property, a necessary element of that claim. The court, therefore, granted summary judgment to defendants on the conversion claim.

Finally, the court found no evidence in the record supported the contention Colasanti intentionally interfered with plaintiffs' prospective economic advantage regarding the 126 NY Property. The court noted Colasanti lacked motivation to interfere with Hudson Urban Renewal obtaining the 126 NY Property. Colasanti was a member of Hudson Urban Renewal and would presumably have profited from the transfer of the property to the entity. The

19

court granted summary judgment to defendants on plaintiffs' intentional interference with economic advantage claims.

Colasanti moved for reconsideration of the December 2, 2022 order denying his motion for summary judgment on plaintiffs' breach of fiduciary duty claims. Plaintiffs opposed the motion and cross-moved for reconsideration of the portions of the December 2, 2022 orders granting summary judgment to defendants on their fraud, conversion, and tortious interference claims.

On January 20, 2023, the court entered two orders. One granted Colasanti's motion for reconsideration and granted summary judgment in his favor on plaintiffs' breach of fiduciary duty claims related to the 126 NY Property. The other January 20, 2023 order denied plaintiffs' motion for reconsideration.

In a written decision, the court rejected plaintiffs' argument the court erred because defendants' first summary judgment motions were denied based on an absence of evidence supporting defendants' arguments. The court noted defendants refiled their summary motions along with evidence not included in this first motion. The newly submitted evidence, the court found, was critical to its decision to grant summary judgment in the December 2, 2022 orders. The court observed the evidence submitted in support of the second set of motions

included the Hudson Urban Renewal operating agreement, which provided business activities of the individual members shall not be deemed to be the business opportunities of Hudson Urban Renewal. In addition, the court found no basis on which to reconsider its conclusion plaintiffs never accepted the offer to purchase the 126 NY Property and, as a result, had no grounds on which to allege conversion. The court also found no basis to reconsider its grant of summary judgment to defendants on plaintiffs' other claims.

On Colasanti's motion for reconsideration, the court found its prior decision denying summary judgment was based on the court's mistaken assumption Hudson Urban Renewal was a member-managed limited liability company (LLC). Where an LLC is member-managed, each member has a fiduciary obligation to the other members with respect to the LLC's business opportunities. See N.J.S.A. 42:2C-39(a) to (c). However, where an LLC is manager-managed, the statutory fiduciary obligations established in N.J.S.A. 42:2C-39(a) to (c) apply only to the managing member and not the other members of the LLC. N.J.S.A. 42:2C-39(i)(1).

The court found Hudson Urban Renewal was a manager-managed LLC and De Pierro was the managing member from the LLC's formation in 2009 through 2016. Thus, the court concluded Colasanti did not have a fiduciary duty

21

to the LLC or its members with respect to the offer made in the March 30, 2009 letter to purchase the 126 NY Property. As a result of this conclusion, the court reconsidered its December 2, 2022 order and granted Colasanti summary judgment on plaintiffs' breach of fiduciary duty claims.

On May 28, 2024, the court dismissed plaintiffs' claims of misappropriation against Colasanti with prejudice pursuant to a stipulation of dismissal. This appeal followed.

Plaintiffs argue: (1) genuine issues of material fact precluded entry of summary judgment in favor of defendants on all claims alleged by plaintiffs; (2) when deciding the summary judgment motions, the court erroneously decided claims that were not the subject of the parties' motions; and (3) the court wrongly decided the summary judgment motions in part by making legal conclusions based on arguments not raised by any party.

II.

We review a grant of summary judgment de novo, applying the same standard as the motion court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that

the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the motion court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

Self-serving assertions that are unsupported by evidence are insufficient to create a genuine issue of material fact. Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009). We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523-24 (1995).

A-3459-23

A.     The August 11, 2022 Orders.

We agree with the motion court's conclusion plaintiffs' claims relating to the 122-124 NY Property were precluded by their settlement of the 2016 Law Division Action.  "Settlement of litigation ranks high in our public policy." Nolan v. Lee Ho, 120 N.J. 465, 472 (1990) (quoting Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App. Div. 1961)).  "It is the policy of the law to encourage settlements . . . ."  Judson v. Peoples Bank and Trust Co., 25 N.J. 17, 35 (1957). "Our strong policy of enforcing settlements is based upon 'the notion that the parties to a dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone." Brundage v. Est. of Carambio, 195 N.J. 575, 601 (2008) (quoting Peskin v. Peskin, 271 N.J. Super. 261, 275 (App. Div. 1994)).

> In recognition of this principle, courts will strain to give effect to the terms of a settlement wherever possible.  It follows that any action which would have the effect of vitiating the provisions of a particular settlement agreement and the concomitant effect of undermining public confidence in the settlement process in general, should not be countenanced.
>
> [Dep't of Pub. Advocate v. N.J. Bd. of Pub. Util., 206 N.J. Super. 523, 528 (App. Div. 1985).]

A-3459-23

Consequently, our courts honor settlement agreements absent compelling circumstances established by clear and convincing proof. Nolan, 120 N.J. at 472.

In the 2016 Law Division Action plaintiffs alleged numerous claims against defendants with respect to the 122-124 NY Property. They settled those claims in a court-approved agreement to sell the property at auction. Plaintiffs agreed to a $2,500,000 reserve at the first auction and, if the highest bid at the first auction did not meet or exceed the reserve, to sell the property at a second auction at which the highest bid would be accepted. Plaintiffs produced no evidence warranting a departure from the settlement or establishing defendants vitiated the agreement. While plaintiffs made vague allegations of fraud by defendants, they failed to identify any such act with specificity and did not produce proof supporting their claims. The record is devoid of a justification for departing from the settlement. Because the grant of summary judgment on plaintiffs' claims relating to the 122-124 NY Property was sound, so too was the court's order barring plaintiffs' experts who opined on damages related to the sale.

A-3459-23

B.      The December 2, 2022 Orders.

The record supports the motion court's conclusion plaintiffs produced no evidence on which a finder of fact could conclude defendants other than Colasanti breached a fiduciary duty to them with respect to the 126 NY Property.[4]  Of the members of Hudson Urban Renewal only Mautone, Jr. was involved in executing the contract to purchase the property.  He relied on Colasanti to convey his offer to purchase the property on behalf of Hudson Urban Renewal to the other members of the entity.  Plaintiffs alleged Colasanti either failed to ensure they received the March 30, 2009 letter offering to authorize Mautone to purchase the property on behalf of Hudson Urban Renewal or to follow up on obtaining a response from the members to that offer.

We also agree with the motion court's conclusion plaintiffs produced no evidence defendants made deceitful statements regarding the 126 NY Property or that plaintiffs owned or had a right to possess the property.  Plaintiffs never: accepted Mautone, Jr.'s offer to purchase the 126 NY Property on behalf of Hudson Urban Renewal, made a financial contribution toward the purchase of the property, inquired about the property for more than a decade after it was

---

[4]  As noted above, the court subsequently reconsidered and reversed its decision Colasanti had a fiduciary duty to plaintiffs.

A-3459-23

purchased, contributed financially to the property during that time, or objected when the property was not mentioned in Hudson Urban Renewal documents as an asset of the entity. Consistent with Hudson Urban Renewal's operating agreement, Mautone, Jr.'s personal business endeavors were not the business opportunities of the LLC. Thus, the court's grant of summary judgment on defendants tortious interference and conversion claims was supported by the record.

C.     <u>The January 20, 2023 Orders.</u>

Our review of the record reveals no basis on which to disturb the court's orders on the parties' reconsideration motions. The December 2, 2022 orders were interlocutory. As the Supreme Court explained, "[b]y definition, an order that 'does not finally determine a cause of action but only decides some intervening matter pertaining to the cause[,] and which requires further steps . . . to enable the court to adjudicate the cause on the merits[,]' is interlocutory." <u>Moon v. Warren Haven Nursing Home</u>, 182 N.J. 507, 512 (2005) (alternations in original) (quoting <u>Black's Law Dictionary</u> 815 (6th ed. 1990)); <u>see also</u> <u>Wein v. Morris</u>, 194 N.J. 364 (2008). The December 2, 2022 orders did not resolve all issues as to all parties because the court in those orders denied Colsanti's summary judgment motion on plaintiffs' breach of fiduciary duty claims.

A court "has the inherent power, to be exercised in its sound discretion, to review, revise, reconsider and modify its interlocutory orders at any time prior to the entry of final judgment." Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 257 (App. Div. 1987). As Judge Pressler explained, "the strict and exacting standards of R. 4:50" do "not apply to interlocutory orders entered prior to final disposition." Ibid. Nor do the limitations of R. 4:49-2 apply to requests for relief from interlocutory orders. Sullivan v. Coverings & Installation, Inc., 403 N.J. Super. 86, 96-97 (App. Div. 2008). See also Del Vecchio v. Hemberger, 388 N.J. Super. 179, 188-89 (App. Div. 2006); Cummings v. Bahr, 295 N.J. Super. 374 (App. Div. 1996); D'Atria v. D'Atria, 242 N.J. Super. 392 (Ch. Div. 1990). We review the denial of a motion for reconsideration of an interlocutory order for an abuse of discretion. Johnson, 220 N.J. Super. at 263-64.

The court granted reconsideration of the December 2, 2022 order denying Colasanti's summary judgment motion based on the unequivocal provisions of N.J.S.A. 42:2C-39 and the undisputed evidence De Pierro was the managing member of Hudson Urban Renewal at the time Mautone, Jr. purchased the 126 NY Property. The court recognized its December 2, 2022 decision was based on the erroneous finding that Hudson Urban Renewal was a member-managed

LCC and the concomitant conclusion Colasanti had a fiduciary duty to the other members of the LLC. It is undisputed, however, Hudson Urban Renewal was a manager-managed LLC and De Pierro was its manager member at the times relevant to the purchase of the 126 NY Property. Because of the manager-managed structure of the LLC, Colasanti did not have a fiduciary duty to plaintiffs with respect to Mautone, Jr.'s purchase of the 126 NY Property. See N.J.S.A. 42:2C-39(i). The court, therefore, did not abuse its discretion when it granted Colasanti's reconsideration motion. For the same reasons, the court's grant of summary judgment to Colasanti on plaintiffs' breach of fiduciary duties claim is supported by the record.

Finally, the court did not abuse its discretion when it denied plaintiffs' motion for reconsideration of the December 2, 2022 order granting summary judgment to defendants. Plaintiffs made no convincing argument reconsideration was warranted. While the court initially denied defendants' summary judgment motion because of an absence of evidence, defendants renewed their motion and submitted evidence the court previously noted was absent from the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-3459-23